PRIMAX RECOVERIES, Plaintiff,

v.

STATE FARM MUTUAL, Defendant.

No. 00–72251.

United States District Court,
E.D. Michigan,
Southern Division.

May 24, 2001.

Thomas B. Bourque, Ann Arbor, MI, for Primax Recoveries, Incorporated, plaintiff.

Robert L. Goldenbogen, Garan, Lucow, Port Huron, MI, for State Farm Mutual Automobile Insurance Company, defendant.

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ROBERTS, District Judge.

### I. INTRODUCTION

Before the Court are the parties' cross motions for summary judgment pursuant to Fed.R.Civ.P. 56. This case arises from a coordination of benefits dispute between two insurers and requires an analysis of ERISA and whether it preempts in this instance. Each party contends that the other is primarily responsible for their mutual insured's medical bills. Defendant is the insured's no-fault carrier and Plaintiff is his employee benefit plan administrator.

Plaintiff[1] seeks to recoup from Defendant monies paid on the insured's behalf for medical expenses incurred as a result of injuries from an automobile accident on August 17, 1997. For the reasons state below, the Court will **GRANT** Plaintiff's Motion for Summary Judgment, thereby entitling it to recover from Defendant all amounts it has paid for medical benefits on the insured's behalf. In making this ruling, the Court necessarily **DENIES** Defendant's Motion for Summary Judgment and declares that Defendant is primarily liable for future medical benefits to which the insured may become entitled as a result of his automobile accident; Plaintiff's Plan is secondarily liable.

### II. BACKGROUND

Timothy Cichanofsky was injured in an automobile accident on August 17, 1997. At the time of his accident, Mr. Cichanofsky was an employee of Grede Foundries, Inc., at one of its Michigan locations. As such, he was eligible to and did participate in the Grede Plan.[2] *(Exhibit 2 of Plaintiff's*

---

1. Plaintiff is the subrogation and reimbursement agent for CIGNA HealthCare. CIGNA Healthcare is an employee welfare benefit plan governed by the Employment Retirement Income Security Act (ERISA) (i.e., The Grede Plan).

2. *The Grede Group Health Plan*
**COORDINATION OF BENEFITS**
A coordination of benefits provision is included in the Group Health Plan. The purpose of this provision is to avoid duplication of medical expense benefit payments when a person is covered by more than one group plan. Application of coordination of benefits results in one plan becoming primary and the other plan(s) becoming secondary.

- A primary plan pays benefits first—amounts paid are not adjusted to reflect benefits available form other group medical plans. When the Grede Group Health Plan is primary, such as when expenses are incurred by the employee, benefits will be calculated and paid according to the amount of benefits available under our plan.
- A secondary plan takes into consideration benefits available from another group plan and adjusts the amount it will pay toward covered medical expenses.
If the Grede Group Health Plan is secondary, benefits paid will be adjusted to reflect the benefits available through the primary group plan.

*Motion for Summary Judgment).* At the same time, Mr. Cichanofsky was insured under a no-fault policy issued by Defendant, State Farm Mutual Automobile Insurance Company.[3] *(Exhibit 3 of Plaintiff's Motion for Summary Judgment).*

The Grede Plan paid $5,609.46 on behalf of Mr. Cichanofsky, between September and December of 1997, for medical bills incurred. However, on May 27, 1999, Plaintiff, Primax Recoveries, Inc., contacted Defendant requesting that it reimburse the Grede Plan for the amounts paid. Defendant denied Plaintiff's claim for reimbursement. Both policies contained coordination of benefits language and both policies sought to make other coverage primary.

This lawsuit followed.

## III. ANALYSIS

### A. Standard of Review

Pursuant to Fed.R.Civ.P. 56(c), summary judgment may be granted "if the

---

If you or your dependents ate covered by the Grede Group Health Plan and at least one other plan, the total amount of benefits paid by the Grede Plan will be reduced by the value of the benefits for the same items of expense provided by any other plan by with you are covered.

**No–Fault Insurance**

In some states with no-fault motor vehicle coverage, the automobile carrier is the primary insurer. All medical expenses related to an automobile accident must be submitted to the automobile carrier and not the Grede Group Plan. Expenses not paid for by no-fault insurance will be considered for payment by the plan.

**3.** *The State Farm No–Fault Insurance Policy*

Limits of Liability
Coverage P
The Schedule shows, for *your* coverage symbol:
1. Which benefits are primary and which benefits are coordinated; and
2. Whether or not *you* have chosen a deductible to apply once per accident to *you* and *your relatives*.

Benefits shown as primary are paid by us, even if payable by another source. Benefits shown as coordinated will be reduced by any amount paid or payable to *you*, or any *relative* under any:
1. vehicle or premises insurance;
2. individual, blanket or group accident or disability insurance; and
3. medical or surgical reimbursement plan.

If *your* coverage symbol shows "Coordinated" under:
1. Allowable Expense, and *you* do not have other medical insurance applicable to the *bodily injury* at the time of the accident, we do not pay the first $300 of allowable expense incurred by *you* and by each of *your relatives;*
2. Work Loss, and *you* do not have other disability insurance applicable to the *bodily injury* at the time of the accident, we do not pay the first $300 of work loss incurred by *you* and by each of *your relatives.*

Any amount payable under this coverage shall be reduced by any amount paid, payable or required to be paid under any federal or state law. This reduction does not apply to:
1. Medicare payments;
2. Worker's Compensation benefits an employer is required to provide, but fails to do so; or
3. Social Security old-age benefits.

Schedule—Coverage P

| Coverage Symbol | Allowable Expense | Work Loss | Survivors' Loss | Deductible Amount |
|---|---|---|---|---|
| P | Primary | Primary | Primary | Primary |
| P2 | Coordinated | Coordinated | Primary | None |
| P3 | Primary | Coordinated | Primary | None |
| P4 | Coordinated | Primary | Primary | None |
| P300 | Primary | Primary | Primary | $300 |

pleadings, depositions, answers, to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R.Civ.P. 56(c).* "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir. 1984).

In evaluating a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmovant, as well as draw all reasonable inferences in the nonmovant's favor. *U.S. v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *Gregg v. Allen–Bradley, Co.,* 801 F.2d 859, 861 (6th Cir.1986). "This burden may be discharged by showing... that there is an absence of evidence to support the nonmoving parties' case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. *Gregg, supra,* 801 F.2d at 861. To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue.

As the U.S. Supreme Court stated, "[t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the [nonmovant's] evidence is merely corroborative or is not significantly probative, summary judgment may be granted." *Id.* However, the evidence must be more than the nonmovant's own pleadings and affidavits. *CNA Insurance Company v. Allstate Insurance Company,* 36 F.Supp.2d 957 (E.D.Mich.1999).

### B. *Applicable Law*

1. *Michigan No–Fault Statutory Law Regarding Deductibles and Exclusions Relating to Other Health and Accident Coverage*

MCL § 500.3109a states as follows:

An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household. *MCL § 3109a*

■ Michigan state courts interpret M.C.L. § 500.3109a; MSA § 24.13109(1) as requiring a finding that a no-fault insurer is secondarily liable for insurance coverage where there is any other form of health care coverage and where the insurers both seek to escape liability through the use of competing coordination of benefit clauses. *Federal Kemper Ins. Co. v. Health Ins. Administration, Inc.,* 424 Mich. 537, 546, 383 N.W.2d 590 (1986) [4].

---

**4.** *Federal Kemper* was reversed in part by *Auto Club Ins. Ass'n v. Frederick & Herrud,* 443 Mich. 358, 505 N.W.2d 820 (1993).

The policy behind M.C.L. § 500.3109a; MSA § 24.13109(1) is designed to eliminate duplicative recovery by an insured from both a health insurer and a no-fault insurer, and to contain or reduce no-fault and health care insurance costs. *Frederick & Herrud*, 443 Mich. 358, 384, 505 N.W.2d 820 (1993).

■ However, M.C.L. § § 500.3109a does not, by its own terms, mandate that a no-fault personal protection insurance policy is secondarily liable in all instances where there is also coverage under a health insurance policy. *CNA Insurance Company, supra,* 36 F.Supp.2d at 960.

### 2. *General Purpose Behind ERISA*

The ERISA was signed into law by President Gerald Ford on Labor Day 1974. *29 U.S.C. § 1001(b).* As the Act's title indicates, its primary purpose is the protection of employees' pension rights for plans created under the auspices of the ERISA. *See Frederick & Herrud, supra,* 443 Mich. 358, 374, 505 N.W.2d 820 The Act also attempts to regulate "employee welfare benefit plan[s]."[5] The underlying purpose of ERISA is to protect "the interests of participants in employee benefit plans and their beneficiaries." *See Frederick & Herrud, supra,* 443 Mich. 358, 374, 505 N.W.2d 820 This directive means that Congress sought to guard qualified benefit plans from claims which have been expressly disavowed by the plans. *Auto Owners Insurance Company v. Thorn Apple Valley, Inc.* 31 F.3d 371, 375 (6th Cir. 1994).

Another clear purpose is to ensure the minimization of costs associated with the establishment of voluntary pension plans. *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 515, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981).

### 3. *MCL § 500.3109a Co–Existing with ERISA*

In examining the impact of ERISA on MCLA 500.3109a, the *Frederick & Herrud* court reasoned as follows:

[a]lthough the Michigan statute [MCL § 500.3109a] purports to regulate insurance and not ERISA plans, we conclude that [the statute] has a direct effect on the administration of the plans in these cases because it would virtually write a primacy of coverage clause into the plans. This is the type of state regulation that would lead to administrative burdens that the historical progression of federal cases recounted earlier forbids. Moreover, and of equal importance, we are persuaded that the federal policies furthers the state interest of fostering the existence of health and welfare benefits plans for its citizens. Thus, the perceived conflict between state and federal policy is not as marked as plaintiff would have us believe. Earlier we noted that there is no law requiring the establishment or funding of ERISA health and welfare benefits plans. We are also unaware of any state law requiring similar protection. Therefore, there is a considerable state interest in facilitating the creation and voluntary funding of such plans, especially in cases in which there is no automobile no-

---

**5.** *29 U.S.C. § 1002(1)* defines the term "employee welfare benefit plan" as "any plan fund, or program which was heretofore or is hereafter established ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise (A) medical, surgical, or hospital care of benefits, or benefits in the event of sickness, accident disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services ..."

fault or other insurance to provide benefits. For these reasons, we conclude that M.C.L. § 500.3109a; M.S.A. § 24.13109(1) does not reach an ERISA plan with a COB [coordination of benefits] clause where that clause is unambiguous. *Frederick & Herrud, supra,* 443 Mich. at 388, 505 N.W.2d 820.

The court held that an unambiguous coordination of benefits clause in an ERISA plan must be given its plain meaning despite the existence of a similar clause in a no-fault policy. *Id.*

■ In other words, the no-fault insurer is primary if both the no-fault policy and the ERISA plan include unambiguous coordination of benefits clauses purporting to require other sources to provide primary coverage. *Id.* This is because state law is preempted by federal law to the extent it attempts to trump an ERISA plan. *Lincoln Mutual Casualty Co., v Lectron Prods. Inc., Employee Health Benefit Plan,* 970 F.2d 206, 209–10 (6th Cir.1992) *Id.* To hold otherwise would, in effect, allow state regulation of ERISA law.

■ Accordingly, the dispute in this case must be resolved by reference to the body of federal common law arising under ERISA. *Thorn Apple Valley, supra,* 31 F.3d at 374.

■ The common law rule dictates that the terms of the ERISA plan, including its COB clause, must be given full effect in order to comply with a primary goal of ERISA, which is to safeguard the financial integrity of qualified plans by shielding it from unanticipated claims. *Id.* at n. 1; *Thorn Apple Valley, supra,* 31 F.3d at 375 However, this consideration does not necessarily mean that the ERISA plan must prevail. *Auto Club Ins., Ass'n v. Health and Welfare Plans, Inc.,* 961 F.2d 588, 593 (6th Cir.1992).

■ For the ERISA protected insurance to be given full effect, it must also expressly disavow other insurance plans. *CNA Insurance Company, supra,* 36 F.Supp 2d 957 at 963. An express disavowal may be identified as a statement wherein the benefit plan specifically subordinates itself to other coverages. *Dayton Hudson Dept. Store Co. v. Auto–Owners, Ins.,* 953 F.Supp. 177, 179 (W.D.Mich.1995) In order to determine whether an ERISA plan contains an express disavowal of other plans, Courts look to the following factors:

> "[t]he plan COB clause, in relevant part: (1) provides that it "will coordinate the health benefits payable under this Plan with similar benefits payable under other plans;" (2) defines "other plans" as including coverage provided pursuant to a no-fault automobile insurance law; (3) purports to eliminate duplicate coverage; (4) purports to coordinate available coverages, setting forth rules for determining which coverage is primary (paying benefits first) and which is secondary; and (5) providing, among such rules, that if no other rule applies, that coverage is primary "which has covered that person for the longest time." " *Travelers Ins. Co. v. Auto–Owners Ins., Co.,* 971 F.Supp. 298, 301 (W.D.Mich.1997)

### 4. *Analysis of the Policy / Plan*

■ The rules of construction for the no-fault policy and the ERISA plan are essentially the same. *Id.* at 300. The language in an insurance policy "is to be given its ordinary meaning unless it is apparent from a reading of the whole instrument that a different or special meaning was intended." *Comerica Bank v. Lexington, Ins. Co.* 3 F.3d 939, 942 (6th Cir.1993). An ambiguous provision in an insurance policy must be construed against the drafter. *Id.* Similarly, "the terms of

an ERISA plan [are to] be interpreted in an ordinary and popular sense, and [ ] any ambiguities in the language of the plan [are to] be construed strictly against the drafter of the plan." *Regents of Univ. of Mich. v. Employees of Agency Rent–a–Car Hosp., Ass'n.*, 122 F.3d 336, 339–40 (6th Cir.1997).

 The Court's paramount responsibility in construing plan language is to ascertain and effectuate the underlying intent. *Sprague v. General Motors Corp.*, 92 F.3d 1425, 1434 (6th Cir.1996). This task begins with reference to the plan language itself, but may also include consideration of reasonable inferences and presumptions under the circumstances. *Id.* Plan language will be found ambiguous only if it is subject to two reasonable interpretations. *Id.* In other words, if plan language, however inartfully worded and clumsily arranged, fairly admits of but one interpretation, it may not be said to be ambiguous or fatally unclear. *Travelers, supra*, 971 F.Supp. at 301.

 Plaintiff maintains that both the Grede Plan and the State Farm policy provide for primary coverage for Mr. Cichanofsky's medical expenses. Consequently, since the traditional no-fault insurance policy and the qualified ERISA plan contain conflicting coordination of benefits clauses, the terms of the ERISA plan, including its COB clause must be given full effect. *Great–West Life & Annuity Insurance Company, supra*, 202 F.3d at 900.

Defendant contends that there is no conflict between the Grede Plan and the no-fault insurance policy for three reasons: (1) the Grede Plan only references situations where there is a duplication of benefits between *group* plans; and, since the no-fault policy is an *individual* insurance policy, as opposed to a *group* policy, the Grede Plan does not apply to COB provisions set forth in an *individual* insurance

policy; (2) the Grede Plan is only applicable in no-fault states in which the automobile carrier is the primary insurer; and, since Mr. Cichanofsky elected coordinated no-fault coverage, that coverage is secondary or excess to other forms of health coverage; and (3) the no-fault policy explicitly subordinates its coverage to other insurance coverage, while the Grede Plan merely references "no-fault insurance" but does not proceed to specifically subordinate itself to the no-fault policy (i.e., the Grede Plan does not "expressly" "disavow" itself to a no-fault automobile insurance policy).

a. Whether the COB Clauses in the Grede Plan are Only Applicable to "Group Plans"

The COB provisions in the Grede Plan are not artfully drawn. Nonetheless, the Court finds that a reasonable inference is that Plaintiff used the term "plan" and "group plan" interchangeably. Therefore, the term "group" as used in the COB provisions should not be restricted to the common sense interpretation. Rather, "Group Plan" should be read to include not only group insurance providers, but also individual insurance providers in the context of a COB Analysis. *See Great West Life & Annuity Ins. Co. v. Titan Indemnity*, 1997 WL 720725 at 3 (E.D. Mich. Feb.18, 1997). Consequently, the term "group plan," as used in the Grede Plan, should be read to include COB clauses in no-fault insurance policies. This is particularly true when the COB clause is read in conjunction with the "No–Fault Insurance" section.

b. Whether the COB of the Grede Plan reaches *some* or *all* States that Require No–Fault Motor Vehicle Coverage

Defendant contends that the language in the Grede Plan only subordinates itself as a secondary insurance carrier in *some*

states with no fault motor vehicle coverage where said insurer is the primary carrier. And, since by statute in Michigan no-fault benefits are secondary where there is another form of health care coverage and the insured has chosen to coordinate benefits, the COB clause of the Grede Plan does not apply here, Defendant contends. The pertinent language is as follows: "[i]n some states with no-fault motor vehicle coverage, the automobile carrier is the primary insurer." *(See footnote 2).* Plaintiff interprets said language to mean that in *any* state which has no-fault coverage, the health plan makes the auto carrier primary.

Upon an initial reading of the plan language, Defendant's interpretation is reasonable. However, the result must be to the contrary. Defendant presents no legal support for the proposition that Michigan is a state where a no-fault insurer is always secondarily liable. To interpret the Grede Plan as Defendant asserts, would mean that there are no-fault states, including Michigan, which are "ipso facto" secondary insurance providers. The law is clear in Michigan that no-fault insurers in Michigan may become secondarily liable for insurance coverage only where there is another form of health care coverage *and* where the insurers *both* seek to escape liability through the use of competing coordination of benefit clauses; and, where ERISA does not preempt to make the no-fault carrier primarily liable.. *See Federal Kemper, Ins., supra,* 424 Mich. at 546, 383. N.W.2d 590 (1986). Therefore, no-fault benefits in Michigan are not automatically deemed secondary. Such coverage is considered primary except under certain circumstances when coordination of benefits are offered, but not under all circumstances where a health insurance policy exists.

The plain meaning of the no-fault insurance clause is to refer to a difference that actually exists—the difference between states with no-fault insurance and states without no-fault insurance. Even though the first sentence of the "No-fault Insurance" section could have been drafted in a more clear and concise manner, in light of the no-fault law in Michigan, the only reasonable interpretation is that the language in the plan was drawing a distinction between states that require no-fault motor vehicle coverage and those that do not.

Further, the balance of the language in the "No-fault Insurance" section of the plan clearly states that:

> "[a]ll medical expenses related to an automobile accident must be submitted to the automobile carrier and not the Grede Group Plan. Expenses not paid for by no-fault insurance will be considered for payment by the plan." *(See footnote 6).*

Read in conjunction with the first sentence of the "No-fault Insurance" section, the language of the Grede Plan is not ambiguous as it is subject to only one interpretation—the "No-fault Insurance" clause applies to all no-fault policies.

c. Whether the Grede Plan "Expressly" "Disavowed" Itself to a No-fault Automobile Insurance Policy

In applying the *Travelers Ins. Co. v. Auto–Owners Ins. Co.* five prong standard in determining whether the Grede Plan expressly subordinated itself to Defendant's no-fault policy, the Court makes the following findings: first, the Grede Plan has language which indicates that it will coordinate the health benefits payable under this plan with similar benefits payable under other plans.[6] Second, although the Grede Plan does not provide for a definition of "other plans," it does contain a sec-

6. "If you or your dependents are covered by the Grede Group Health Plan and at least one

tion entitled "No–Fault Insurance" which it discusses coverage provided pursuant to a no-fault automobile insurance law.[7] Third, the Grede Plan purports to eliminate duplicate coverage.[8] Fourth, the plan purports to coordinate available coverages, setting forth rules for determining which coverage is primary (paying benefits first) and which is secondary.[9] Finally, the Grede Plan does not contain a "catch-all" provision, but it does state under the "No-fault Insurance" section: "[a]ll medical expenses related to an automobile accident must be submitted to the automobile carrier and not the Grede Group Plan. Expenses not paid for by no-fault insurance will be considered for payment by the plan." *(See footnote 6)*.

Consequently, the Court finds that Plaintiff has expressly disavowed or subordinated itself to Defendant's no-fault automobile insurance policy. The two COB clauses are, therefore, in irreconcilable conflict, each operating to subordinate its coverage to the other's. In the face of such a conflict, the federal common law directs that the ERISA plan language, "including its coordination of benefits clause, must be given full effect in order to comply with a primary goal of ERISA, which is to safeguard the financial integrity of qualified plans by shielding them from unanticipated claims." *See Thorn Apple Valley,* 31 F.3d at 375.

## CONCLUSION

Accordingly, Plaintiff is entitled to a judgment declaring that its Plan coverage is secondary to Defendant's and that it is entitled to recoup medical benefits paid on behalf of Mr. Cichanofsky from Defendant. Plaintiff's Motion is **GRANTED,** and Defendant's is **DENIED.**

**IT IS SO ORDERED.**

---

other plan, the total amount of benefits by the Grede Plan will be reduced by the value of the benefits for the same items of expense provided by any other plan by which you are covered." *(pg. 18 of The Grede Plan—Exhibit 2 of Plaintiff's Motion of Summary Judgment)*

7. "In some states with no-fault motor vehicle coverage, the automobile carrier is the primary insurer. All medical expenses related to an automobile accident must be submitted to the automobile carrier and not the Grede Group Plan. Expenses not paid for by no-fault insurance will be considered for payment by the plan." *(pg. 17 of The Grede Plan—Exhibit 2 of Plaintiff's Motion of Summary Judgment)*

8. "A coordination of benefits provision is included in the Group Health Plan. The purpose of this provision is to avoid duplication of medical expense benefit payments when a person is covered by ore than one group plan. Application of coordination of benefits results in one plan becoming primary ad the other plan(s) becoming secondary." *(pp. 16–17 of The Grede Plan—Exhibit 2 of Plaintiff's Motion of Summary Judgment)*

9. "A primary plan pays benefits first— amounts paid are not adjusted to reflect benefits available form other group medical plans.

When the Grede Group Health Plan is primary, such as when expenses are incurred by the employee, benefits will be calculated and paid according to the amount of benefits available under our plan.
A secondary plan takes into consideration benefits available from another group plan and adjusts the amount it will pay toward covered medical expenses.
If the Grede Group Health Plan is secondary, benefits paid will be adjusted to reflect the benefits available through the primary group plan.
If you or your dependents are covered by the Grede Group Health Plan and at least one other plan, the total amount of benefits paid by the Grede Plan will be reduced by the value of the benefits for the same items of expense provided by any other plan by with you are covered." *(pg. 17 of The Grede Plan— Exhibit 2 of Plaintiff's Motion of Summary Judgment)*