**ALLSTATE INSURANCE COMPANY,**
Plaintiff,

v.

**KNAPE & VOGT MANUFACTURING
COMPANY, Defendant.**

No. 1:00–CV–89.

United States District Court,
W.D. Michigan,
Southern Division.

April 30, 2001.

Dale L. Arndt, Bensinger, Cotant, Menkes & Aardema, Grand Rapids, MI, for plaintiff.

Christopher D. Harrington, Knape & Vogt Mfg. Co., Grand Rapids, MI, for defendant.

## MEMORANDUM OPINION

McKEAGUE, District Judge.

This case presents a coordination of benefits dispute between a no-fault automobile insurer, plaintiff Allstate Insurance Company, and a self-funded health benefits

plan established by defendant Knape & Vogt Manufacturing Company ("Knape & Vogt"), which constitutes an employee welfare benefit plan under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* There is no dispute that Bruce Paul Avery, an employee of Knape & Vogt, sustained injuries in an automobile accident that at least nominally implicated coverage under both the Allstate no-fault policy and Knape & Vogt's health benefits plan. To date, Allstate has paid Mr. Avery's medical expenses, totaling $20,649.11. In this action, Allstate seeks reimbursement from the Knape & Vogt plan, contending the plan's coverage is primary. The case is now before the Court on cross-motions for summary judgment based on a stipulated record, both parties acknowledging that there are no fact issues and that the matter is ripe for judgment as a matter of law.

■ Both the Allstate policy and the Knape & Vogt plan contain coordination of benefits clauses. If these clauses create an irreconcilable conflict, then, under controlling Sixth Circuit law, the ERISA plan coordination of benefits clause must be given full effect. *Auto Owners Ins. Co. v. Thorn Apple Valley,* 31 F.3d 371 (6th Cir. 1994). Allstate maintains this rule does not control in this case because the two coordination of benefits clauses do not conflict. Allstate argues that while its clause is clear and effective to subordinate coverage, the plan's coordination of benefits clause is not.

There is no question but that Allstate's coordination of benefits clause clearly and effectively subordinates the Allstate no-fault coverage to that of a plan such as Knape & Vogt's.[1] The coordination of benefits provision of the Knape & Vogt plan is not quite as simple. First of all, as Allstate observes, the preface to the coordination of benefits provision expressly acknowledges that the plan "will always pay either its benefits in full or a reduced amount which, when added to the benefits payable by the other plan or plans, will not exceed 100% of allowable expenses."[2] All-

---

1. The Allstate coordination of benefits clause provides:

    **Coordination of Benefits**
    1. If Allowable Expenses are identified as excess on the declaration page, Allowable Expenses benefits will be reduced by any amount paid or payable under the provisions of any:
    2.
    a) individual, blanket or group accident disability or hospitalization insurance.
    b) medical or surgical reimbursement plan.
    c) automobile no-fault benefits or medical expense benefits, or premises insurance affording medical expense benefits.
    This reduction applies only to amounts that are duplication of payment for the same items of loss or expense. This reduction applies only to you or a resident relative. If Allowable Expenses are identified as excess on the declaration page, the injured person must seek treatment afforded for, or payable by his other coverage before we will be liable for any excess not paid for by

such other coverage. You have a duty to mitigate your damages.
    (Emphasis in original.)

2. The full text of the first prefatory paragraph is as follows:

    The Coordination of Benefits provision is intended to prevent the payment of benefits which exceed expenses and to allocate the burden of payment appropriately. It applies when the Participant or any Dependent who is covered by this Plan is also covered by any other plan or plans. When more than one coverage exists, one plan normally pays its benefits in full and the other plans pay either a reduced benefit or no benefit. This Plan will always pay either its benefits in full or a reduced amount which, when added to the benefits payable by the other plan or plans, will not exceed 100% of allowable expenses. Only the amount paid by this Plan will be charged against the Plan maximums.

state seizes on this language to support its argument that the plan does not expressly disavow coverage, but "will always pay." Yet, the sentence immediately preceding that emphasized by Allstate recognizes that benefits paid by a secondarily liable plan may be reduced to zero if the plan liable for primary coverage pays 100% of allowable expenses.

Thus, determining whether the Knape & Vogt plan expressly disavows or subordinates coverage in this case requires reference to the "Payment Priorities" provision. In pertinent part, it provides:

Each plan makes its claim payment in the following order, if Medicare is not involved:

A. A plan that contains no provision for Coordination of Benefits, or states that its coverage is primary, or does not have the same rules of priority as those listed below, pays before all other plans, including this Plan, and this Plan shall have only secondary liability.

B. Individual automobile insurance coverage, including, but not limited to, "no-fault" or other state-mandated automobile insurance coverage.

C. The plan covering the claimant as an employee (or named insured).

. . . .

Applying this protocol in accordance with its plain meaning would seem to dictate that ¶ A has no application,[3] and that Allstate's no-fault automobile insurance coverage is, under ¶ B, prior to Knape & Vogt's coverage of Mr. Avery as an employee under ¶ C. The Knape & Vogt plan thus clearly appears to subordinate its coverage to Allstate's.

Allstate insists, however, that this supposed "plain meaning" is not sufficiently clearly expressed. Allstate observes that although the Knape & Vogt plan's coverage is expressly subordinated in ¶ A to certain other plans, no such express subordination is manifest on the face of ¶¶ B and C. To "expressly" subordinate its coverage, Allstate implicitly argues, Knape & Vogt ought to have included explicit subordination language in each paragraph of the Payment Priorities provision.

This strained, hypertechnical construction ignores the initial phrase of the Payment Priorities provision: "Each plan makes its claim payment in the following order, . . ." The order of payment then prescribed in the protocol undeniably provides that a plan covering the claimant as an employee is subordinate to no-fault automobile insurance coverage. The import and intendment of this language appears to be clear.

█ In support of its contrary construction, Allstate relies heavily on *Dayton Hudson Department Store Co. v. Auto-Owners Ins. Co.*, 953 F.Supp. 177 (W.D.Mich.1995). In *Dayton Hudson*, the court observed, consistent with *Auto Owners v. Thorn Apple Valley*, that unless there is an irreconcilable conflict between coordination of benefits clauses, ERISA preemption does not come into play; and that unless the ERISA plan expressly disavows or subordinates its coverage to that of another policy or plan, there is no irreconcilable conflict. The *Dayton Hudson* court went on to find that the subject ERISA plan coordination of benefits clause did not effectively subordinate its coverage to that of the competing Auto Owners no-fault policy, which did effective-

3. Neither party has argued that ¶ A plays any role in determining priority between the in-

stant coverages.

ly subordinate its coverage, and therefore held that the plan's coverage was primary.

The *Dayton Hudson* court did not *expressly* apply the provisions of the plan coordination of benefits clause to the facts in the opinion. It simply quoted the relevant coordination of benefits provisions and conclusorily held they did not "expressly disavow or subordinate" plan coverage. Because of ambiguity in its reasoning, *Dayton Hudson* is arguably subject to two different constructions. On the one hand, it can arguably be deemed to stand for the proposition that a plan's multi-step protocol defining priority of coverages is ineffective *per se* to "expressly disavow or subordinate" coverage because it is contingent, or lacking in clarity and definiteness. On the other hand, *Dayton Hudson* can also be understood to mean that a multi-step protocol fails to expressly disavow or subordinate coverage where *application* of its terms to the facts either renders plan coverage primary or fails to yield a definitive answer on priority of coverage.

While Allstate's argument in the present case appears to be based on the former construction, post—*Dayton Hudson* case law has uniformly adopted the latter construction. In *State Farm Mutual Automobile Ins. Co. v. Your Group Benefits Plan*, 1999 WL 1005641 at *6, (W.D.Mich.), the court cautioned against reading the "expressly disavow" requirement too strictly, holding that such determination "can only be made after reading *all* provisions of an ERISA plan together, including an order of benefit determination, to ascertain whether the plan language reasonably shows that the ERISA plan *intended* to subordinate its coverage to another source of benefits, such as no-fault insurance."

In *Travelers Ins. Co. v. Auto–Owners Ins. Co.*, 971 F.Supp. 298, 300 (W.D.Mich. 1997), the court expressly distinguished *Dayton Hudson* and explained that the court's duty in construing a plan coordination of benefits clause is to ascertain and effectuate the underlying intent, with reference to the plan language itself and reasonable inferences arising therefrom. *Travelers* observes that plan coordination of benefits language, albeit "unartfully worded and clumsily arranged," which nevertheless fairly admits of but one interpretation, can be effective to "expressly disavow or subordinate." *Id.* at 301.

The *Travelers* analysis was followed in *CNA Ins. Co. v. Allstate Ins. Co.*, 36 F.Supp.2d 957, 963–64 (E.D.Mich.1999), where the court expressly distinguished *Dayton Hudson*, noting deficiencies in the plan language at issue in *Dayton Hudson.* See also *Bay Area Medical Center v. Auto–Owners Ins. Co.*, 1999 U.S.Dist. LEXIS 5267 (W.D.Mich.) (accord); *Allstate Ins. Co. v. American Medical Security, Inc.*, 975 F.Supp. 1005, 1007 (E.D.Mich. 1997) (accord).

To be sure, there have also been decisions in the post—*Dayton Hudson* era finding the ERISA plan coverage primary. *See e.g., Campbell Soup Co. v. Allstate Ins. Co.*, 1996 WL 931576 (W.D.Mich.); *State Farm v. Your Group Benefits Plan, supra.* Yet, these rulings, too, are based on careful consideration of the language of the conflicting coordination of benefits clauses with the purpose of effectuating the underlying intent.

■ This brief survey of recent case law exposes the meritlessness of Allstate's position. It is not enough to simply cite *Dayton Hudson* and argue that because Allstate's coordination of benefits clause is clearer and more definite than that of Knape & Vogt's plan, the Court should find that there is no irreconcilable conflict and that Allstate's superior clause should be given effect. What the recent case law undeniably demonstrates is that, in deter-

mining whether the plan coordination of benefits clause expressly disavows or subordinates coverage, the Court must give effect to the *intent* which manifestly informs the language, despite technical shortcomings or hypothetical ambiguities in the language.

 When the language of the Knape & Vogt plan coordination of benefits clause is read in accordance with its plain and ordinary meaning, there is no ambiguity. That the drafters of the plan intended, by ¶ B of the "Payment Priorities" provision, to subordinate its coverage to that of any no-fault automobile insurance policy is abundantly clear. Indeed, this intent could hardly have been more clearly expressed.

 Allstate relies on prefatory language in the plan coordination of benefits provision to the effect that "this Plan will always pay either its benefits in full or a reduced amount." This language represents merely a general explanation of the coordination of benefits clause. It cannot reasonably be construed as negating the possibility that, pursuant to operation of the more specific Payment Priorities provision, the plan's liability could be reduced to zero where the primary coverage of another plan afforded full coverage. Moreover, to the extent that the prefatory language could arguably be construed as being in conflict with ¶ B of the Payment Priorities provision, the more specific language of ¶ B must necessarily be deemed controlling. *See Kmart Corp. v. Fireman's Fund Ins. Co.*, 88 F.Supp.2d 767, 774 (E.D.Mich. 2000) (observing that under Michigan law, where contract provisions conflict, the more specific provision controls).

Accordingly, it is clear, on the present stipulated record, that the Allstate policy and the Knape & Vogt plan each expressly and mutually subordinates its coverage to that of the other. This irreconcilable conflict is resolved under the law by giving effect to the coordination of benefits provision in Knape & Vogt's ERISA plan. It follows that the coverage provided in the Knape & Vogt plan is secondary to that provided in the Allstate policy. Accordingly, Allstate's claim for reimbursement of benefits paid on behalf of its insured Bruce Paul Avery must be denied and defendant Knape & Vogt is entitled to judgment in its favor.