**FRANKENMUTH MUTUAL INSURANCE COMPANY, Plaintiff/Counter–Defendant,**

v.

**WAL–MART ASSOCIATES' HEALTH AND WELFARE PLAN, Defendant/Counter–Claimant.**

No. 01–CV–72347–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 30, 2002.

**614**

Robert L. Goldenbogen, Garan, Lucow, Port Huron, MI, for plaintiff.

John M. Roels, Wheeler Upham, Grand Rapids, MI, for defendant.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

### I. BACKGROUND/FACTS

The facts in this matter are not in dispute. This is a declaratory action filed by the parties seeking a determination of the parties' rights and liabilities under the Plan documents and no-fault automobile insurance contract at issue.

On October 10, 2000, Victoria S. Noble was involved in an automobile accident and sustained certain injuries. At the time of the accident, Ms. Noble was an employee of the Wal–Mart stores and a participant in its health care benefits plan, the Wal–Mart Associates' Health and Welfare Plan (the "Plan"), Defendant/Counter–Claimant in this action. Ms. Noble's coverage under the Plan began in January 1999. The Wal–Mart Plan is a self-funded health care benefit plan established pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiff was also eligible for personal injury protection benefits under a Michigan no-fault automobile insurance policy issued by Plaintiff/Counter–Defendant Frankenmuth Mutual Insurance Company ("Frankenmuth") at the time of the accident. Frankenmuth is an insurance corporation licensed to do business in the state of Michigan, including providing no-fault insurance policies. Ms. Noble's coverage under the Frankenmuth policy began in April 2000.

As of November 26, 2001, Frankenmuth has paid $6,490.09 in medical bills on behalf of Ms. Noble. The Plan has also paid sums on behalf of Ms. Noble. The Plan's Administrator, Blue Cross Blue Shield of Illinois, has requested reimbursement from Frankenmuth on several occasions. Frankenmuth has rejected the Plan's request for payment and has, in turn, requested reimbursement from the Plan for sums Frankenmuth has expended on behalf of Ms. Noble. The Plan has denied Frankenmuth's request.

On May 31, 2001, Plaintiff Frankenmuth filed the instant suit against the Defendant Plan. On September 21, 2001, Defendant Plan filed a Counterclaim against Plaintiff Frankenmuth. The parties have now filed cross-motions for summary judgment. Responses and replies have been filed. A hearing has been held on the matter. The Court grants Defendant/Counter–Claimant

Wal–Mart Associates Health and Welfare Plan's Motion for Summary Judgment and denies the Motion for Summary Judgment brought by Plaintiff/Counter–Defendant Frankenmuth Mutual Insurance Company. Declaratory Judgment is entered in favor of Defendant and against Plaintiff.

## II. *ANALYSIS*

### A. *Applicability of Summary Judgment Standard*

Under Federal Rule of Civil Procedure 56(c), in order for a summary judgment motion to prevail, the moving party must demonstrate that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law. When ruling on a Rule 56 motion, this Court must determine whether there are issues of material fact requiring a trial. In determining whether there are issues of fact requiring a trial "the inferences to be drawn from the underlying acts contained in the 'affidavits, attached exhibits and depositions' must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus., Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)(quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). The party moving for summary judgment bears the initial burden of showing that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once

the moving party has met its burden of production, the nonmoving party must go beyond the pleadings and by affidavits, or by "depositions, answers to interrogatories and admissions on file," to designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548. Thus, the nonmoving party must do more than show that there is some metaphysical doubt as to the material facts. *Matsushita, supra,* at 586, 106 S.Ct. 1348. Significant probative evidence in support of the complaint must be presented in order to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Sixth Circuit in *Wilkins v. Baptist Healthcare System, Inc.,* 150 F.3d 609 (6th Cir.1998), has set forth "Suggested Guidelines" to adjudicate ERISA actions.[1] The Sixth Circuit states that the Rule 56 Summary Judgment procedure is "inapposite to the adjudication of an ERISA action" because of the Circuit's "precedents [which] preclude an ERISA action from being heard by the district court as a regular bench trial." *Wilkins,* 150 F.3d at 619.[2] "[I]t makes little sense to deal with such an action by engaging a procedure designed solely to determine 'whether there is a genuine issue for trial.' " *Id.* The district court should use neither the summary judgment nor the bench trial procedures in deciding ERISA actions. *Id.* at 620. As to the merits of the case, the district court should conduct

---

**1.** The Panel included, Judges Ryan, Cole and Gilman. Judge Cole wrote the judgment of the court, which all three judges agreed to, affirming the district court's decision granting judgment in favor of the Plan Administrator and affirming the district court's ruling that no evidence which was not submitted to the Plan Administrator is to be considered by the court. Judge Gilman wrote the opinion regarding the summary judgment issue, stating that summary judgment under Rule 56 is an inappropriate way to review the Plan Administrator's decision. Judge Gilman's "suggested guidelines" regarding the district court's review of ERISA actions was agreed to by Judge Ryan but not by Judge Cole.

**2.** An ERISA claim is equitable in nature and there is not eligible for a *jury* trial. *Wilkins,* 150 F.3d at 616, *citing Bair v. General Motors Corp.,* 895 F.2d 1094, 1096 (6th Cir.1990).

a review based solely upon the administrative record and render findings of fact and conclusions of law. *Id.* at 619. If a procedural challenge is alleged, such as lack of due process afforded by the administrator or bias on its part, only then may the district court consider evidence outside to the administrative record. *Id.* The discovery phase in an ERISA action will only cover the exchange of administrative record, and, if there is a procedural due process claim against the administrator, discovery is limited to evidence related to procedural challenges. *Id.*

This Court notes that the Sixth Circuit in *Wilkins* did not indicate whether *Wilkins* applied to all cases involving ERISA issues where a decision by the plan administrator is implicated and another insurance entity is involved as in this case. Neither party cited to *Wilkins* but the issue should be raised in light of the Sixth Circuit's suggestion as to how to proceed in ERISA matters. In any event, if the Court considers the matter under cross-motions for summary judgment under Rule 56 or as cross-motions for entry of judgment under *Wilkins,* the parties are in agreement that the matter can be decided based on the Court's interpretation of the Plan language and insurance policy language at issue. The parties have submitted various documents attached to their respective briefs.

### B. *Priority/Coordination of Benefits*

Although the parties attempt to distinguish each others' arguments based on case law, they really do not dispute the applicable law. The main issue is the interpretation of the Plan language regarding whether the Plan or the Frankenmuth policy should be subordinated to the other. Specifically, the Court is called upon to determine whether the Plan language "expressly disavows" primary coverage making the Plan secondary to the Frankenmuth insurance policy.

The parties agree that the seminal case in the Sixth Circuit is *Auto Owners Ins. Co. v. Thorn Apple Valley, Inc.,* 31 F.3d 371 (6th Cir.1994) where the Sixth Circuit addressed the issue of how to analyze a priority dispute between an ERISA-qualified health plan benefit and a Michigan no-fault automobile insurance policy. The Sixth Circuit noted that there is no rule of priority found in the ERISA statute but that Congress intended the federal courts to establish a body of common law to address disputes, such as this, that are not addressed in the ERISA statute. The Sixth Circuit concluded that "when a traditional insurance policy and a qualified ERISA plan contain conflicting coordination of benefits clauses, the terms of the ERISA plan, including its COB clause, must be given full effect." *Id.* at 374. The Sixth Circuit noted that the underlying purpose of ERISA is to protect the interests of participants in employee benefit plans and their beneficiaries and this means that Congress sought to guard qualified benefit plans from claims which have been "expressly disavowed" by the plan. *Id.* The court's paramount responsibility in construing a plan's language is to ascertain and effectuate the underlying intent. *Sprague v. General Motors Corp.,* 92 F.3d 1425, 1434 (6th Cir.1996). The court must refer to the plan language and also consider any reasonable inferences and presumptions under the circumstances. *Id.* The plan language will be found ambiguous only if it is subject to two reasonable interpretations. *Id.* If the plan language, even if inartfully worded or clumsily arranged, could be only fairly interpreted one way, the language is not unambiguous nor fatally unclear. *Travelers v. Auto-Owners Ins. Co.,* 971 F.Supp. 298, 300 (W.D.Mich.1997). A plan cannot assert excess or secondary status simply because it is an ERISA plan, but, rather, the plan is merely empowered to establish itself as an

excess provider *vis a vis,* among others, no-fault insurers and any conflict between the COB provisions should be resolved under federal common law. *Dayton Hudson Dept. Store Co. v. Auto–Owners Ins. Co.,* 953 F.Supp. 177, 179 (W.D.Mich.1995). The plan must be read in its entirety. *Regents of the University of Michigan v. Employees of Agency Rent–A–Car Hos. Ass'n,* 122 F.3d 336 (6th Cir.1997).

Plaintiff Frankenmuth claims that the language of the plan at issue did not "expressly disavow" other plans, such as the insurance policy at issue. Plaintiff Frankenmuth claims that the coordination of benefits provisions of the Wal–Mart Plan contains no language subordinating plan coverage to that available from a no-fault policy. The Frankenmuth policy clearly indicates that it is an excess plan and that it is subordinated to other plans, such as an employee benefit plan. That the Frankenmuth policy clearly indicates that it is an excess plan is not in dispute. Plaintiff agrees that the "Rights of the Plan" section of the Wal–Mart Plan notes that the Plan is secondary to other insurance policies. However, because the "Coordination of Benefits" section of the Plan, specifically, the "Order of Benefit Determination" subsection, does not "expressly disavow" other plans nor indicate that the Plan is subordinated to other plans, this creates ambiguity in the Plan language between the "Right of the Plan" and "Coordination of Benefits" section of the Plan. Plaintiff argues that because there is an ambiguity, the Plan's intent cannot be ascertained. Plaintiff claims that the only applicable COB provision indicates that the plan that has covered the participant for the longest period of time will pay first. Because Ms. Noble was covered by the Wal–Mart Plan for a

longer period of time (since January 1999) than the Frankenmuth policy (since April 2000) then the Wal–Mart Plan must pay first. Plaintiff cites the following cases to support its position: *Dayton Hudson, supra; Travelers, supra; Citizens Ins. Co. v. NorthStar Print Group, Inc.,* Case No. 2:97–CV–144 (W.D.Mich. Feb. 24, 1998)(unpublished); *Farm Bureau General Ins. Co. of Michigan v. Morton Buildings, Inc. Employee Health and Welfare Benefit Plan,* Case No. 97–CV–191 (W.D.Mich. August 28, 1998)(unpublished); and *Allstate v. The Sherwin–Williams Co. Group Comprehensive Health Care Coverage Plan,* Case No. 98–CV–118 (W.D.Mich. Oct. 20, 1999)(unpublished). At the hearing, Plaintiff submitted an order entered by the Honorable George Caram Steeh, *DaimlerChrysler Corporation Employee Health Plan v. AAA and the Estate of Linda Michael,* Case No. 00–CV–75490 (E.D.Mich. Dec. 26, 2001)(unpublished).

Defendant claims that there is no ambiguity or conflict within the Plan between its right to reduction and its coordination of benefits language. Contrary to Plaintiff's assertion, Defendant contends that in *both* sections, the no-fault insurance policy is identified as primary and the Plan is secondary. Defendant argues that the Plan language expressly disavows coverage for or subordinates itself to the no-fault benefits provided by Plaintiff. The Plan language therefore controls and it is Plaintiff which is the primary provider in this case. Defendant cites *Allstate Ins. Co. v. Knape & Vogt Mfg. Co.,* 147 F.Supp.2d 804 (W.D.Mich.2001); *Primax Recoveries v. State Farm Mutual,* 147 F.Supp.2d 775 (E.D.Mich.2001); and *Allstate Ins. Co. v. Wal–Mart Stores, Inc.,* Case No. 95–CV–64 (W.D. Mich. June 15, 1999)(unpublished).[3]

---

**3.** It is noted that both parties criticize the other's use of unpublished decisions. However, because both parties cited to unpublished decisions, any argument against the use of those decisions will not be considered.

Although these cases are insightful the Court's task is to review the Plan language at issue and determine whether the Plan expressly disavows coverage for injuries arising out of an automobile accident or expressly subordinates its coverage to coverage under a no-fault automobile insurance policy. The pertinent provisions are as follows:

**RIGHTS OF THE PLAN**

\* \* \* \* \* \*

### RIGHT TO REDUCTION, REIMBURSEMENT AND SUBROGATION

The Plan has the right to 1) reduce or deny benefits otherwise payable by the Plan and 2) recover or subrogate 100 percent of the benefits paid or to be paid by the Plan on your behalf and/or your dependents to the extent of any and all of the following payments:

\* \* \* \* \* \*

— Any auto or recreational vehicle insurance coverage or benefits including, but not limited to, uninsured/underinsured motorist coverage.

\* \* \* \* \* \*

**NOTES:**

— If you reside in a state where automobile personal injury protection or medical payment coverage is mandatory, the Plan takes secondary status. The Plan will reduce benefits for an amount equal to, but not less than, that state's mandatory minimum personal injury protection or medical payment requirement.

— The Plan has first priority with respect to its right to reduction, reimbursement and subrogation.

— The Plan is secondary to any excess insurance policy, including, but not limited to, school and/or athletic policies.

— The Plan has the right to reduce or withhold future benefits payments for your claims and your dependents' claims.

— The Plan will not pay for future medical charges related to the accident until medical charges have exceeded all amounts that were recovered, that should have been recovered, or are to be recovered by or on behalf of the participant.

— The Plan's section regarding the right to reduction, reimbursement and subrogation applies to the associate and to covered dependents.

— The Plan has the right to recover interest in the amount paid out by the Plan relating to the accident.

— The Plan has the right to recover the amount paid out relating to the accident in a lump sum.

— The Plan does not pay for nor is responsible for the participant's attorney's fees. Attorney's fees are to be paid solely by the participant.

— The right of reduction, reimbursement and subrogation is based on the Plan language in effect at the time of judgment, payment or settlement.

\* \* \* \* \* \*

**COORDINATION OF BENEFITS (COB)**

Our Plan has the right to coordinate with other plans under which an individual is covered so the total medical benefits payable will not exceed the normal level of benefits under this medical coverage. This right includes those covered by our Plan under COBRA.

\* \* \* \* \* \*

**NOTE:** The Plan is secondary to any excess insurance policy, including, but not limited to, school and/or athletic policies.

### Definition of Other "Plans"

"Plan(s)" means these types of medical and health care benefits:

— Coverage under a governmental program provided or required by statute, including no fault coverage to the extent required in policies or contracts by a motor vehicle insurance statute or similar legislation.

\*　　\*　　\*　　\*　　\*　　\*

### Order of Benefit Determination

For the purpose of establishing the order of benefit determination, the following rules will apply.

When a claim is made, the primary plan pays its benefits without regard to any other plans. The secondary plan adjusts to its benefits so the total benefits available will not exceed their guidelines.

A plan without a coordinating provision is always the primary plan. If all plans have a coordinating provision:

— The plan covering the participant for whom the claim is made, other than as the dependent, pays first, and the other plan pays second.

\*　　\*　　\*　　\*　　\*　　\*

— When none of the above establish an order of benefit determination, the plan that has covered the participant for whom the claim is made for the longest period of time will pay first.

These coordination rules apply whether or not a claim is made under the other plan. If a claim is not made, benefits under our Plan will be pended or denied until such time as an Explanation of Benefits is received showing a claim made with the primary plan.

**NOTES:** The Plan will not coordinate benefits with any other plan with respect to a covered transplant. Also, the Plan is secondary to any excess insurance policy, including, but not limited to, school and/or athletic policies.

(Associate Benefits Book, Summary Plan Description, Effective Date January 2000, D–19 to D–22)

Reading the Plan language including both the "Rights of the Plan" and "Coordination of Benefits" sections, there is one fair interpretation of the Plan language which is not so ambiguous as to be unenforceable. Plaintiff would have the Court find that because the COB section does not indicate in the "Order of Benefit Determination" portion that the Plan is secondary to an automobile insurance policy, that creates an ambiguity with regard to the rest of the Plan language. However, such an interpretation would ignore the Sixth Circuit's ruling that the terms of the ERISA plan, including its COB clause, must be given full effect. Plaintiff's interpretation would render the rest of the language in the COB section itself meaningless. Specifically, Plaintiff would have the Court ignore the language in the COB provision as noted above, "NOTE: *The Plan is secondary to any excess insurance policy*, including, but not limited to, school and or athletic policies" (Plan, D–21)(italics added), and "NOTES: The Plan will not coordinate benefits with any other plan with respect to a covered transplant. *Also, the Plan is secondary to any excess insurance policy*, including, but not limited to, school and/or athletic policies." (Plan, D–22)(italics added). In two notations in the COB provision, the Plan language specifically states it is secondary to any excess insurance policy. The COB provision further defines "Plan(s)" to include "Coverage under a governmental program provided or *required by statute, including no fault coverage to the extent required in policies or contracts by a motor vehicle insurance statute or similar legislation.*" (Plan, D–21)(italics added). Under the "Order of Benefit Determination" provision of the COB section, it states that "When a claim is made, the primary plan pays its benefits

without regard to any other plans. *The secondary plan adjusts its benefits so the total benefits available will not exceed their guidelines."* The COB provision has defined the Plan as a "secondary" plan to any excess insurance policy in two portions of the COB provision. Although the portion of the COB provision which sets forth an order of benefit determination does not specifically include excess automobile insurance, two portions under the COB provision expressly states that the Plan is secondary to any excess insurance policy. Reading the COB clause as a whole, rather than only one portion, the COB provision itself states that the Plan is secondary to excess insurance policy. This interpretation of the Plan language gives all of the Plan language, including the COB provision, full effect, not just one portion of the COB provision, as required by the Sixth Circuit.

Reading the "Rights of the Plan" provision in addition to the COB provision, clearly establishes that the Plan has expressly given itself the right to reduction, reimbursement and subrogation to any auto vehicle insurance coverage, as specifically stated under the Right to Reduction, Reimbursement and Subrogation section of the Plan. (See Plan, D–19) The "Rights of the Plan" provision expressly states that the Plan is secondary to an automobile personal injury protection or medical payment coverage. Plaintiff does not dispute that the "Rights of the Plan" clearly states that the Plan is secondary to an auto vehicle insurance coverage. Plaintiff's argument is that because the determination order of the COB language does not expressly state the Plan is secondary to any excess insurance coverage then the Plan language, including the "Rights of the Plan" section, renders the whole Plan language on this issue ambiguous. Plaintiff's argument that Defendant is reading the Plan language "chronologically" is without merit since, as noted previously, Plaintiff's

interpretation would render the "Rights of the Plan" and COB provisions meaningless. As noted by the Sixth Circuit, the terms of the ERISA plan must be given full effect. *Thorn Apple Valley,* 31 F.3d at 374. Giving full effect of the terms of the ERISA Plan at issue, including the "Rights of the Plan" and COB provisions, the Court finds that the Plan "expressly disavowed" coverage for the payments where the employee has excess coverage as presented in this case. The *Allstate Ins. Co. v. Wal–Mart Stores, Inc.* case cited by Defendant, although unpublished, is persuasive in that the Plan at issue was analyzed and the plaintiff Allstate raised the same argument as Plaintiff in this case. The unpublished cases cited by Plaintiff do not involve the Plan at issue nor the language contained in the Plan at issue.

### C. *Judicial Review*

Defendant notes that judicial review in this case is limited because the Plan gives the administrator sole discretion and authority to control and manage the Plan. See Art. IV, p. 4, Associates' Health and Welfare Plan Wrap Document. Plaintiff does not dispute that the Plan gives the administrator sole discretion to manage the Plan.

▮▮▮▮ A denial of benefits under an ERISA plan "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 103, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If a plan gives the administrator such discretion the administrator's decision is reviewed under the "highly deferential arbitrary and capricious standard." *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 983 (6th Cir.

1991). Such decisions are not arbitrary and capricious if they are "rational in light of the plan's provisions." *Id.* at 984. "Discretionary authority" does not hinge on the word "discretion" or any other "magic word." *Perez v. Aetna Life Ins. Co.,* 150 F.3d 550, 555 (6th Cir.1998)(en banc). Instead, the lower courts are to focus on the breadth of the administrator's power and their authority to determine eligibility for benefits or to construe the terms of the plan. *Id.*

Here, as noted previously, there is no dispute that the Plan Administrator in this case has been given sole discretion to control and manage the Plan. Therefore, the arbitrary and capricious standard applies to the Court's review of the Plan Administrator's decision in denying Plaintiff's request for reimbursement. Based on the above analysis, the Plan Administrator's decision was not arbitrary and capricious and was rational in light of the language set forth in the Rights of the Plan and COB provisions.

## III. *CONCLUSION*

For the reasons set forth above, declaratory judgment is entered in favor of Defendant/Counter–Claimant Wal–Mart Plan and against Plaintiff/Counter–Defendant Frankenmuth insurance policy.

Accordingly,

IT IS ORDERED that Plaintiff/Counter–Defendant's Motion for Summary Judgment (**Docket No. 21, filed December 3, 2001**) is DENIED.

IT IS FURTHER ORDERED that Defendant/Counter–Claimant's Motion for Summary Judgment (**Docket No. 20, filed November 30, 2001**) is GRANTED.

IT IS FURTHER ORDERED Plaintiff/Counter–Defendant's Complaint is DISMISSED with prejudice and that declaratory judgment is entered as to Defendant/Counter–Claimant's Counterclaim in favor of Defendant/Counter–Claimant and

against Plaintiff/Counter–Defendant. The Court declares that Defendant/Counter–Claimant's Plan is secondary to Plaintiff/Counter–Defendant's automobile insurance policy.