**Hazel P.W. LEHMAN, Plaintiff,**

v.

**EXECUTIVE CABINET SALARY CONTINUANCE PLAN, et al., Defendants.**

**No. C2–99–1224.**

United States District Court, S.D. Ohio, Eastern Division.

Jan. 29, 2003.

---

Thomas Dubois Thompson, Adam H Leonatti, Thompson Meier & Dersom–2, Columbus, OH, for Plaintiff.

Carl John Schmidt, III, James D. Houston, Wood & Lamping–1, Cincinnati, OH, for Defendants.

## ORDER AND OPINION

MARBLEY, District Judge.

### I. Introduction

This matter is before the Court on Plaintiff Hazel P.W. Lehman's Brief in Support of Complaint for Enforcement of Rights and Clarification of Future Rights Under ERISA. For the following reasons, the Court **ENTERS JUDGMENT ON THE MERITS** in favor of Plaintiff, overturns Defendant Provident Life & Accident Insurance Company's ("Provident") denial of benefits, and remands the matter to Provident for further proceedings consistent with this Order.

### II. Procedural History and Procedural Posture

Plaintiff brought this action pursuant to the Employee Retirement Security Act of 1974, as amended, 29 U.S.C. §§ 1001–1461, ("ERISA"), seeking judicial review of the final administrative decision of Provident, by which it denied her disability benefits under the terms of the Executive Cabinet Salary Continuance Plan (the "Plan"). Plaintiff originally filed this action in the Franklin County Common Pleas Court on October 21, 1999. Provident filed a Notice of Removal with this Court on November 12, 1999.

Plaintiff brings her complaint pursuant to ERISA, which empowers a participant or beneficiary of an ERISA-covered benefit plan to bring a civil action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under

the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C.A. § 1132(a)(1)(B) (1999). Neither party disputes the fact that ERISA covers the Plan in this case pursuant to 29 U.S.C.A. § 1003(a). This Court has jurisdiction in this matter pursuant to 29 U.S.C.A. § 1132(e)(1).

■ Federal courts have resolved ERISA cases such as this one using varying procedural devices including conducting a bench trial pursuant to Federal Rule of Civil Procedure 52 or deciding the case on cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 617 (6th Cir.1998) (Gilman, J., concurring). Recently, however, in a two-judge concurring opinion, the Court of Appeals for the Sixth Circuit has prescribed a procedural approach for ERISA cases, advising that courts should not follow the normal procedures of a bench trial or summary judgment. *Id.* at 617–20. Instead, courts should employ the following procedure in deciding ERISA cases:

> As to the merits of the action, the district court should conduct a *de novo* review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly. The district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator.

*Id.* at 619. This Court will follow this procedure making necessary findings of fact and conclusions of law and deciding this case by issuing an order for judgment on the merits. *See, e.g., Frankenmuth Mut. Ins. Co. v. Wal–Mart Assocs.' Health & Welfare Plan*, 182 F.Supp.2d 612, 615–16 (E.D.Mich.2002) (citing *Wilkins* and

equating cross-motions for summary judgment with cross-motions for entry of judgment for purposes of ERISA case); *Nester v. Allegiance Healthcare Corp.*, 162 F.Supp.2d 901, 907–08 (S.D.Ohio 2001) (citing *Wilkins* and treating a motion for summary judgment as a motion for judgment on the merits).

## III. Standard of Review

■ "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If the plan gives the administrator discretionary authority, then the Court reviews the denial of benefits under the discretionary arbitrary and capricious standard of review. *See id.* at 109, 109 S.Ct. 948; *Perry v. Simplicity Eng'g*, 900 F.2d 963, 965 (6th Cir.1990).

■ The Court will find discretionary authority in the Plan only if the terms of the Plan clearly grant the administrator such authority, although no "magic words" are required. *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir.1998). But in this case, the Plan contains no clear grant of discretionary authority. For example, the Plan does not reserve to the administrator discretion to determine the adequacy of Plaintiff's proof of disability. Furthermore, Provident does not contend that the Plan grants it discretionary authority. Rather, Provident argues that it should prevail under either a *de novo* or an arbitrary and capricious standard of review. Therefore, the Court will review this case *de novo* because the Plan does not grant Provident discretionary authority.

In reviewing Provident's decision *de novo*, the Court "simply decides whether or not it agrees with the decision." *Perry*, 900 F.2d at 966. *De novo* review under ERISA means "*de novo* review of the record before the administrator," and the Court may not consider additional evidence that was not before Provident. *Id.; see also Wilkins*, 150 F.3d at 616 ("When conducting a *de novo* review [in an ERISA case], the district court must take a 'fresh look' at the administrative record but may not consider new evidence or look beyond the record that was before the plan administrator.").

## IV. Findings of Fact

From 1971 until 1998, Plaintiff worked as an executive secretary for Doctor's Hospital in Columbus, Ohio. Plaintiff typically worked forty to sixty hours per week typing, filing, recording minutes, and performing other secretarial tasks for the hospital. Plaintiff's job as a secretary required her to sit for extended periods of time during a typical day, which included two hours of attending meetings and six hours of typing at a computer.

As an employee of Doctor's Hospital, Plaintiff participated in the Executive Cabinet Salary Continuance Plan (the "Plan"), which Provident underwrites. The Plan provides for benefits should an employee become totally disabled. The Plan defines total disability as follows: "Due to Injuries or Sickness: 1. you are not able to perform the substantial and material duties of your occupation; and 2. you are receiving care by a Physician which is appropriate for the condition causing the disability." (Record at 5.) Under the Plan, "your occupation" is defined as "the occupation (or occupations, if more than one) in which you are regularly engaged at the time you became disabled." (Record at 5.) If Plaintiff became totally disabled within the meaning of the plan, she was entitled to receive a monthly benefit of $2,000.00 after an elimination period of 180 days of total disability. (Record at 5.)

By November 1993, Plaintiff began to suffer chronic neck and lower back pain and she sought medical treatment. Doctors diagnosed her with numerous back and neck conditions, and she underwent surgery on May 23, 1994. Following her surgery, Plaintiff convalesced for nearly a year during which time she did not work.

In approximately April 1995, Plaintiff returned to her regular position at Doctor's Hospital where she resumed work days of ten to twelve hours even though her physician advised that such long hours would exacerbate her back pain. By July of 1997, Plaintiff's neck and back had worsened, and she expressed interest in pursuing disability because she had persistent difficulty performing her work responsibilities. Thereafter, Dr. Boyd Bowden performed a disability evaluation in which he recommended a change in Plaintiff's employment status so that she would not be required to sit or type for long periods of time. In order to complete two major projects before terminating her employment completely, Plaintiff began working part-time in 1998 and continued until June 1, 1998. By early 1998, Plaintiff was no longer able to work full-time because was unable to sit, type, or file for long periods of time.

Plaintiff filed a "Statement of Claim" with Provident in late June 1998 seeking disability benefits under the Plan. (Record at 23.) Plaintiff stated that her "condition has been ongoing for several years, gradually getting worse." She indicated that June 1, 1998 was the last day she worked. On line 23 of the Statement of Claim, which asks for "Dates of total and complete inability to work," Plaintiff indicated June 1, 1998 to the present. Attached to

Plaintiff's statement was an "Attending Physician's Statement" completed by Dr. Ruth Purdy who listed Plaintiff's conditions as including osteoarthritis, degenerative disc disease, osteoporosis, and hypertension. Dr. Purdy further indicated that Plaintiff was not able to work long hours sitting, typing, pulling files, or lifting. (Record at 25.) Plaintiff was born on July 7, 1942. Therefore, she was 55 years old in June of 1998. She has never received any benefits under the Plan.

On October 9, 1998, Provident's claims representative, David Shaffer, spoke to Dr. Purdy who informed him that, in her opinion, Plaintiff was capable of working as a secretary in a part-time capacity. Mr. Shaffer confirmed the conversation in writing. Thereafter, on October 19, 1998, Provident denied Plaintiff's claims for benefits on the grounds that when she became disabled, her "occupation" was that of a part-time secretary, a position her treating physician certified she was still capable of performing.

On January 11, 1999, Plaintiff, through counsel, responded to Provident's denial and requested additional information about why Provident denied her claim. Mr. Shaffer replied that according to Plaintiff's claim, she became disabled on June 1, 1998 while working as a part-time secretary. Since Plaintiff's physician indicated that she could perform the duties of a part-time secretary, Plaintiff was therefore not totally disabled from her "occupation" as defined by the plan. Because the Plan did not provide for part-time disability benefits, Plaintiff's claim was denied.

Thereafter, in a letter dated February 8, 1999, Plaintiff requested a formal review of Provident's conclusion that she was not disabled as defined by the policy and included the January 19, 1999 Independent Medical Evaluation of Dr. Richard M. Ward. In his report, Dr. Ward concluded

that "Taking into account the job description given to me that would require her to sit for a total of six hours in a normal eight hour work day, it is obvious that she cannot return to her prior employment." (Record at 54.) Mr. Shaffer again responded that Plaintiff was capable of returning to work as she could assume the duties of her "occupation," that is, part-time secretary.

Plaintiff requested further consideration of her claim in a letter dated June 1, 1999. With that letter Plaintiff included Affidavits from Plaintiff and Jo Ann Robinson, a coworker, and a letter from Dr. J. Richard Costin, who served as chairman of the Board of Trustees at Doctor's Hospital during Plaintiff's employment. This communication argued that Plaintiff's part-time status during 1998 was only a temporary accommodation that the hospital permitted so that she could complete two major projects. Plaintiff maintained that her regular occupation was as a full-time executive secretary. Ms. Robinson and Dr. Costin corroborated Plaintiff's statements about her part-time work. On June 22, 1999, Defendant reaffirmed its denial and notified Plaintiff of her appeal rights under ERISA.

## V. Analysis and Conclusions of Law

Plaintiff alleges that Provident wrongly denied her disability benefits. Plaintiff argues that her regular occupation at the time she became disabled was that of a full-time executive secretary. Although she was working part-time in 1998, Plaintiff contends that her part-time arrangement with Doctor's Hospital was only temporary, and was not her regular occupation. She further disputes Provident's allegation that she merely retired, arguing that she left her job at Doctor's Hospital only because she was no longer able to perform her necessary job functions. Plaintiff also argues that Provident im-

properly considered her ability to work part-time or in other similar positions because the Plan provides that Plaintiff will receive disability benefits if she is unable to perform the duties of her occupation, regardless of whether she is able to perform in another occupation. Finally, Plaintiff contends that even if her regular occupation at the time she· became disabled was that of a part-time secretary, she in fact is unable to perform the duties of the occupation of part-time secretary.

Provident argues that it properly denied Plaintiff disability benefits. Provident claims that Plaintiff merely retired from her job, and did not become disabled. Provident alleges that Plaintiff's regular occupation at the time she became disabled was that of a part-time secretary, an occupation she continued to be able to perform despite her disability. Provident maintains that Plaintiff's date of disability was June 1, 1998, the date Plaintiff listed on her claim form as the date on which her total and complete inability to work began. Therefore, because Plaintiff was only working part-time on June 1, 1998, her regular occupation was that of a part-time secretary.

The Plan provides disability benefits to Plaintiff if she suffers "total disability." Total disability is given two definitions. The first definition applies if Plaintiff has not attained the age of 55 or "before benefits have been paid for ten years for a period of disability, whichever is later." (Record at 5.) Although Plaintiff had attained the age of 55 on June 1, 1998, she had not yet received any benefits under the plan. Therefore, because she had not been paid for ten years for a period of disability, the first definition of total disability applies in this case.

The applicable definition of total disability under the Plan provides that Plaintiff is totally disabled if "due to Injuries or Sick-

ness: 1. You are not able to perform the substantial and material duties of your occupation; and 2. you are receiving care by a Physician which is appropriate for the condition causing the disability." "Your occupation" is defined as "the occupation (or occupations, if more than one) in which you are regularly engaged at the time you become disabled." (Record at 5.)

■ Based on the Court's review of the administrative record in this case, the Court concludes that Plaintiff's regular occupation at the time she became disabled was that of a full-time executive secretary. The Court concludes that Plaintiff was regularly engaged as a full-time executive secretary from the time she began working for Doctor's Hospital in 1971 until the day she terminated her employment on June 1, 1998. The fact that she worked only part time during parts of 1998 does not change the fact that Plaintiff was *regularly* engaged as a full-time secretary.

The evidence before the Court demonstrates that Plaintiff worked part time in 1998 on only a temporary basis. At some point in 1998, Plaintiff's back problem worsened to the extent that she was unable to continue working as an executive secretary at Doctor's Hospital. The hospital asked that she remain working on a part-time basis until two major projects were completed. In Plaintiff's April 19, 1999 Affidavit, she states that in early 1998 her back and neck problems had worsened to the point that she could no longer continue working as an executive secretary for Doctor's Hospital. (Record at 49–50.) Because the annual board meeting and another function were scheduled for April and May, Plaintiff agreed to continue working part-time until after those events. During this period, Plaintiff worked part-time with substantial assistance from others.

Dr. J. Richard Costin's May 24, 1999 letter to Plaintiff's counsel confirms Plaintiff's version of facts surrounding her part-time work at Doctor's Hospital in early 1998. (Record at 53.) According to Dr. Costin, Plaintiff was never considered a part-time employee. When her back and neck symptoms worsened, the hospital asked that she continue work through the annual board meeting. Although she completed her work for the meeting with additional assistants, she retained responsibility for her normal tasks.

David Shaffer, a Provident claims representative, wrote to Plaintiff's counsel on February 18, 1999 indicating that Plaintiff had been denied benefits under the Plan because her claim listed "6/1/1998 as her date of disability which also was her date of retirement." (Record at 61.) Therefore, because Plaintiff was only a part-time employee on June 1, 1998, and because she was able to work as a part-time secretary, she was not entitled to benefits under the Plan. The Court concludes, however, that on June 1, 1998, Plaintiff's regular occupation was as a full-time executive secretary. Furthermore, Plaintiff did not list June 1, 1998 as her date of total disability as Mr. Shaffer alleges. Rather, she listed June 1, 1998 as the date of her "total and complete inability to work." (Record at 23.) This, however, is not the applicable definition of totally disabled for the Plan. Rather, totally disabled is defined as an inability "to perform the substantial and material duties of your occupation." (Record at 5.) Because Plaintiff's regular occupation on June 1, 1998 was as a full-time secretary, the question is whether Plaintiff was able to complete the substantial and material duties of that occupation. Had the claim form asked Plaintiff this question, she may have listed an earlier date as the date of her disability.

Defendant's argument that Plaintiff merely retired on June 1, 1998 is not relevant to the determination of whether Plaintiff was totally disabled under the Plan. The fact that Plaintiff may have referred to June 1, 1998 as her retirement date does not mean that she was not totally disabled under the Plan on that date and entitled to benefits under the Plan.

Plaintiff argues that Defendant improperly merges the two definitions of totally disabled under the Plan. Under the second, inapplicable definition of totally disabled, Plaintiff would be totally disabled if she were unable "to engage in any gainful occupation in which [she] might reasonably be expected to engage." (Record at 5.) Plaintiff argues that by maintaining that she can find work as a part-time secretary, Defendant is applying this definition of totally disabled, because while a job as a part-time secretary would be a gainful occupation, it was not Plaintiff's occupation at the time of her disability. Because the Court concludes that Plaintiff's regular occupation at the time of her disability was as a full-time executive secretary, Defendant's argument that Plaintiff could find work as a part-time secretary is irrelevant. Although Plaintiff's ability to perform any gainful occupation would be relevant under the second definition of totally disabled under the Plan, because that definition is inapplicable, the fact that Plaintiff could find work in other occupations is irrelevant.

In conclusion, this Court decides only that Plaintiff's occupation for purposes of the Plan was as a full-time executive secretary from 1971 through June 1998. This Court does not decide whether Plaintiff was unable to perform the duties of a full-time or part-time executive secretary as of June 1998. The parties do not dispute that Plaintiff was unable to perform the duties of a full-time executive secretary,

and the record appears to support this. Whether Plaintiff was able to perform the duties of a part-time secretary is in dispute, but this is not an issue to be decided because the Court concludes that Plaintiff's regular occupation under the Plan was as a full-time executive secretary. The Court remands this matter to Provident to make further determinations of Plaintiff's eligibility for benefits under the Plan consistent with the Court's conclusion that Plaintiff's regular occupation through June 1998 was as a full-time executive secretary.

## VI. Conclusion

For the foregoing reasons, the Court **ENTERS JUDGMENT ON THE MERITS** in favor of Plaintiff, overturns Provident's denial of benefits, and remands the matter to Provident for further proceedings consistent with this Order

**IT IS SO ORDERED.**